# AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Jared Wise, a Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, state as follows in support of a warrant for the arrest of FRANK ROBINSON ("ROBINSON"), Social Security Number xxx-xx-xxxx, Date of Birth x/xx/59.

1. Your affiant has been employed by the FBI since July 2004. I am currently assigned to the Public Corruption Squad of the FBI's Washington Field Office. I have training and/or experience in the enforcement of laws of the United States, including the preparation, presentation, and service of criminal complaints as well as arrest and search warrants. My duties include investigation of various criminal allegations including those involving corruption by public officials.

2. The facts and information contained in this affidavit are based on my personal knowledge and observations, my review of records and documents obtained during this investigation, information received from other individuals, and other law enforcement officers, and information gained through my training and experience. This affidavit does not set forth all information known to the FBI about this case and is being submitted solely for the purpose of providing sufficient information to establish probable cause for the arrest of ROBINSON.

3. Based on my investigation, I believe there exists probable cause that ROBINSON, a District of Columbia public official, has solicited a bribe, in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C).

4. At all relevant times herein, ROBINSON was an Inspector for the District of Columbia Department of Transportation, Public Space Management Administration, Office of Infrastructure Oversight (hereinafter referred to as "OIO"). Robinson was a full-time employee

of the District of Columbia government.

5. At all relevant times herein, OIO Inspectors were charged with the responsibility of investigating and initiating enforcement actions in cases of work performed without a permit in all publicly owned property including roadways, tree spaces, sidewalks and alleys. As part of his official acts, ROBINSON was empowered by the District of Columbia government to issue citations to individuals who failed to obtain a permit as required by law.

6. At all relevant times herein, CW1 was a contractor who purchased and rehabilitated homes for resale in the District of Columbia and elsewhere.

7. At all relevant times herein, CW2 was a plumber who occasionally worked as a subcontractor for CW1 in the District of Columbia.

8. Since about December 2004, the FBI has been conducting a covert investigation involving possible bribery payments made to ROBINSON by a contractor and subcontractor who engaged in various construction projects in the District of Columbia in or near public spaces and who were therefore subject to potential work stoppages and fines by OIO.

9. In or about November 2004, CW1 was rehabilitating a home located at 140 Uhland Terrace, N.E., Washington, D.C., and CW2 was working as a subcontractor plumber on that project. In an effort to connect the house at 140 Uhland Terrace to the District of Columbia main water line beneath the street, CW2 dug a ditch from the house through the city sidewalk to the street. Before he dug in public space, CW2 was required to obtain a permit. However, the application for a permit that CW2 had submitted to the District of Columbia government was still pending at the time that he dug through the city sidewalk.

10. After CW2 dug through the sidewalk, ROBINSON arrived on the job scene at 140

Uhland Terrace, purportedly in response to a citizen complaint that an electrical line to a streetlight pole had been cut near the job site. When Robinson discovered that CW2 had not yet obtained a permit to dig in public space, he told both CW1, the contractor, and CW2 that they were subject to a fine. Thereafter, Robinson said words to the effect that he could make the problem go away for CW1 and CW2 if he was paid money.

11.   The investigation of Robinson by the FBI was predicated on subsequent interviews of CW1 and CW2 concerning their interaction with Robinson at the job site at 140 Uhland Terrace in or about November 2004.

12.   On December 7, 2004, during a recorded telephone conversation between ROBINSON and CW1, ROBINSON and CW1 discussed the incident at 140 Uhland Terrace. Among other things, ROBINSON told CW1 that he had kept another inspectors "off of" CW1 at the job site.

13.   On or about April 26, 2006, during a recorded telephone conversation between CW2 and ROBINSON, CW2 told ROBINSON about a new construction project that he was involved with at 1000 Rhode Island Avenue, N.W., Washington, D.C. CW2 told ROBINSON that his plumbing permit had expired. CW2 also told Robinson that he did not want anyone to come by to "piss on" his job, to which ROBINSON responded "all right."

14.   During a recorded telephone conversation between CW2 and ROBINSON on or about May 4, 2006, ROBINSON told CW1 that he owed him for "watching" his job site. The following is an excerpt from the recorded conversation on or about May 4, 2006:

> **CW1:** *I don't want this to come back to haunt me.*
>
> **Robinson:** *You already in my books now, you know you already owe, so I been watching it for you, how much more time you need?*

>*CW1:* I need about two more weeks baby, you know what I'm saying?
>
>*Robinson:* You gonna owe me big time, you gonna owe me big time.
>
>*CW1:* When I meet you, when I see you, what do you want me to have for you?

\*   \*   \*

>*Robinson:* Okay, I'll tell you what, we'll talk face to face when you come in town in two weeks. I'll watch it for now, okay?
>
>*CW1:* Yeah, keep that under wraps for me because I really don't want this man calling me and bothering me
>
>*Robinson:* All right.

15. According to CW2, on or about May 13, 2006, ROBINSON telephoned CW2 and asked about the construction site at 1000 Rhode Island Avenue. ROBINSON also told CW2 that he wanted money. CW2 replied that he would call ROBINSON on Monday, May 15, 2006.

16. On or about May 15, 2006, during a videotaped and recorded meeting between CW2 and ROBINSON near the job site at 1000 Rhode Island Avenue, the two men discussed the expired plumbing permit at the job site. ROBINSON indicated that he wanted payment in exchange for ensuring that CW1 did not get a $2,500 fine. The following is an excerpt from the recorded conversation of on or about May 15, 2006:

>*Robinson:* You want your permit right away, right?
>
>*CW1:* Damn right I want my permit.

\*   \*   \*

>*Robinson:* You need to love me baby, you need to love me.

\*   \*   \*

>*Robinson:* I did my part, you didn't get no fines or anything.

> ***CW1:*** *Give me a price, I got to talk to my people about money, I just came back in town, tell me how much.*
>
> ***Robinson:*** *What you think man? If you had somebody had to watch something so you don't get a $2,500 ticket?*
>
> ***CW1:*** *Frank, I need a price.*
>
> ***Robinson:*** *Give me $500.*

17.  Based upon the above circumstances, I submit that probable cause exists that FRANK ROBINSON, being a public official, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept things of value, to wit, United States currency, in return for him (a) being influenced in the performance of his official duties and (b) being induced to do and omit to do acts in violation of his official duties, in violation of Title 18, United States Code, Section 201 (b)(2)(A) and (C).


_____
Jared Wise
Special Agent, FBI


SWORN and SUBSCRIBED to before me
this \_\_\_\_ day of May 2006

_____
United States Magistrate Judge

5